UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIYADIN BEKLER, | Case No. 1:25-cv-01974-CDB (HC) |
| Petitioner, | ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | (Doc. 1) |
| KRISTI NOEM, *et al.*, | |
| Respondents. | |

Petitioner Diyadin Bekler ("Petitioner"), a federal immigration detainee proceeding by counsel, initiated this action by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 and a motion for temporary restraining order ("TRO") on December 22, 2025, while in custody of the Immigration and Customs Enforcement ("ICE") at the Mesa Verde ICE Processing Center, located in Bakersfield, California. (Docs. 1, 2). On December 23, 2025, Petitioner filed the operative first amended petition for writ of habeas corpus. (Doc. 7). Respondents are Kristi Noem (Secretary of the Department of Homeland Security), Pamela Bondi (Attorney General of the United State), Todd Lyons (Acting ICE Director), Marcos Charles (ICE Field Office Director, Enforcement and Removal Operations), and Ronald Murray (Warden, Mesa Verde Detention Center).[1]

---

[1] Although Respondents purport in a single footnote to "move to strike and dismiss" all named defendants except Mr. Charles (Doc. 14 at 1 n.1), they have not filed a properly noticed

1

Before this case was reassigned to the undersigned for all purposes,[2] on December 24, 2025, the then-presiding district judge denied Petitioner's request for a TRO and referred the matter to the undersigned. (Doc. 11).

**I.      Relevant Background**

The relevant facts largely are undisputed (*see* Doc. 14 at 1-2). Petitioner is a citizen of Turkey who unlawfully entered the United Staes from Mexico on May 29, 2022, in the El Paso, Texas, area. He was arrested by ICE, deemed removable because he was not in possession of the necessary documentation to enter the United States, and placed in removal proceedings pursuant to Section 240 of the Immigration and Naturalization Act ("INA"). *See* (Doc. 7 ¶ 10). On June 3, 2022, Petitioner claimed fear of persecution if returned to Turkey and was served a form for credible fear referral. Although unclear, it appears Petitioner remained in immigration custody throughout this time. On March 14, 2023, Petitioner filed an application for asylum. (Doc. 7-1, Exhibit ["Ex."]. C). The following day, U.S. Citizenship and Immigration Services acknowledged receipt of Petitioner's application, noted the application was pending, and that Petitioner was permitted to remain in the United States pending adjudication of the application. *Id*. Days later, on March 20, 2023, Petitioner was released pursuant to an ICE "Order of Release on Recognizance." (Doc. 7-1, Ex. F). Respondents acknowledge that Petitioner was "released on parole." (Doc. 14 at 2). It is unclear whether Petitioner's parole was "conditional parole" pursuant to 8 U.S.C. § 1226(a)(2), or "humanitarian parole" pursuant to 8 U.S.C. § 1182.

More than two years later, on July 10, 2025, Petitioner appeared in person at an ICE office in San Francisco "as scheduled for reporting" and was detained, purportedly pursuant to 8 U.S.C. § 1225(b)(1). (Doc. 7. ¶¶ 2, 11; Doc. 7-1, Ex. D). At the time, despite the pendency of his asylum application for more than two years, Petitioner had yet to be screened during a credible fear interview.

---

motion seeking such relief. *See* Local Rule 230. Accordingly, Respondents' request is disregarded.

[2] On December 30, 2025, after the parties consented to the jurisdiction of a U.S. Magistrate Judge for all purposes pursuant to 28 U.S.C. § 636(c)(1), this action was reassigned to a U.S. Magistrate Judge. (Doc. 12).

II.     **Governing Authority**

　　A.     **The Writ of Habeas Corpus**

Writ of habeas corpus relief extends to a person in custody under the authority of the United States. *See* 28 U.S.C. § 2241. A district court considering an application for a writ of habeas corpus shall "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243.

Relevant here, "in cases that do not involve a final order of removal, federal habeas corpus jurisdiction remains in the district court" pursuant to 28 U.S.C. § 2241 where the petitioner "challenges his confinement on statutory and constitutional grounds." *Nadaraja v. Gonzales*, 443 F.3d 1069, 1075-76 (9th Cir. 2006); accord *Flores-Torres v. Mukasey*, 548 F.3d 708, 713 (9th Cir. 2008) (holding "the district court has jurisdiction over Torres's habeas petition challenging his detention" in ICE custody).

　　B.     **Statutory Immigration Framework (8 U.S.C. § 1225 and § 1226)**

Two statutes govern the detention and removal of inadmissible noncitizens from the United States: 8 U.S.C. § 1226 and § 1225. Relevant here is the legal background accurately presented by the district court in *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503 (N.D. Cal. Sept 12, 2025):

> 1.     **Full Removal Proceedings and Discretionary Detention (§ 1226)**
>
> The "usual removal process" involves an evidentiary hearing before an immigration judge. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011). Section § 1226 provides that while removal proceedings are pending, a noncitizen "may be arrested and detained" and that the government "may release the alien on ... conditional parole." § 1226(a)(2); accord *Thuraissigiam*, 591 U.S. at 108 (during removal proceedings, applicant may either be "detained" or "allowed to reside in this country"). When a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination. *Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)). A noncitizen will be released if he or she "demonstrate[s] to the satisfaction of the officer that such release

3

would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." *Id.* (citing 8 C.F.R. § 236.1(c)(8)).

"Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 CFR §§ 236.1(d)(1)). If, at this hearing, the detainee demonstrates by the preponderance of the evidence that he or she is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk," the IJ will order his or his release. *Diaz*, 53 F.4th at 1197 (citing *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). Once released, the noncitizen's bond is subject to revocation. Under 8 U.S.C. § 1226(b), "the DHS has authority to revoke a noncitizen's bond or parole 'at any time,' even if that individual has previously been released." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 968 (N.D. Cal. 2019). However, if an immigration judge has determined the noncitizen should be released, the DHS may not re-arrest that noncitizen absent a change in circumstance. *See Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021). Where the release decision was made by a DHS officer, not an immigration judge, the Government's practice has been to require a showing of changed circumstances before re-arrest. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017).

**2.    Expedited Removal and Mandatory Detention (§ 1225)**

While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)," a process that provides for expedited removal. *Jennings*, 583 U.S. at 303 (2018). Under § 1225, a noncitizen "who has not been admitted or who arrives in the United States" is considered "an applicant for admission." 8 U.S.C. § 1225(a)(1). For certain applicants for admission, 8 U.S.C. § 1225 authorizes "expedited removal." § 1225(b)(1). § 1225(b)(1) provides that:

> "If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States or is described in clause (iii) is inadmissible under section 212(a)(6)(C) or 212(a)(7) [8 U.S.C. § 1182(a)(6)(C) or 1182(a)(7)], the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 208 [8 USCS § 1158] or a fear of persecution."

Sections 8 U.S.C. § 1182(a)(6)(C) and 1182(a)(7) respectively refer to noncitizens who are inadmissible due to misrepresentation or failure to meet document requirements. Clause (iii) of § 1225(b)(1) allows the Attorney General (who has since delegated the responsibility to the Department of Homeland Security Secretary) to designate for expedited removal noncitizens "who ha[ve] not been

admitted or paroled into the United States, and who ha[ve] not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph." § 1225(b)(1)(A)(iii)(II).

To summarize, under § 1225(b)(1), two groups of noncitizens are subject to expedited removal. First, there are "arriving" noncitizens who are inadmissible due to misrepresentation or failure to meet document requirements. The implementing agency regulations define "arriving alien" as applicants for admission "coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1.2. The second group –designated noncitizens –includes noncitizens who meet all of the following criteria: (1) they are inadmissible due to lack of a valid entry document or misrepresentation; (2) they have not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility"; and (3) they are among those whom the Secretary of Homeland Security has designated for expedited removal. *Thuraissigiam*, 591 U.S. at 109; § 1225(b)(1).

"Initially, DHS's predecessor agency did not make any designation [under (3)], thereby limiting expedited removal only to 'arriving aliens,'" that is, noncitizens encountered at ports of entry. *Make the Rd. N.Y. v. Noem*, No. 25-cv-190 (JMC), 2025 U.S. Dist. LEXIS 169432, at *14 (D.D.C. Aug. 29, 2025). In the following years, DHS extended by designation expedited removal to noncitizens who arrive by sea and who have been present for fewer than two years, and to noncitizens apprehended within 100 air miles of any U.S. international land border who entered within the last 14 days. *Id.* This was the status quo until January 2025, when the Department of Homeland Security revised its § 1225 designation to "apply expedited removal to the fullest extent authorized by statute." Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025). Under this designation, expedited removal applies to noncitizens encountered *anywhere* within the United States, who have been in the United States for less than two years and are inadmissible for lack of valid documentation or misrepresentation. In short, expedited removal was expanded to apply for the first time to vast numbers of noncitizens present in the interior of the United States.

Under the expedited removal statute § 1225(b)(1), if an applicant "indicates either an intention to apply for asylum" or "a fear of persecution," the immigration officer "shall refer the alien for an interview by an asylum officer." §§ 1225(b)(1)(A)(i)–(ii). If the asylum officer determines that the applicant has a "credible fear," the applicant "receive[s] 'full consideration' of his asylum claim in a standard removal hearing." *Thuraissigiam*, 591 U.S. at 110. If the officer determines there is no "credible fear," the officer "shall order the alien removed from the United States without further hearing or review." § 1225(b)(1)(B)(iii). However, the officer's decision may be appealed by the applicant to an immigration judge, who must

conduct the review "to the maximum extent practicable within 24 hours, but in no case later than 7 days after the date of the determination." *Id.* Detention under § 1225(b)(1) is "mandatory" "pending a final determination of credible fear of persecution and if found not to have such a fear, until removed." *Id.* (citing § 1225(b)(1)(B)(iii)(IV) ("Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed.")

[Section] 1225 also contains a provision that applies to applicants for admission not covered by § 1225(b)(1). *Jennings*, 583 U.S. at 287. This provision, 1225(b)(2), states that, subject to statutory exceptions, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a [full removal proceedings] of this title." § 1225(b)(2). In other words, noncitizens subject to 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their full removal proceedings are pending. This is in contrast to the default detention regime under § 1226(a), which allows for discretionary release and review of detention through a bond hearing.

### 3. The Government's Recent Change in Position

Until this year, the DHS has applied § 1226(a) and its discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation. This practice was codified by regulation. The regulations implementing the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") state that "Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). In fact, the government has conceded in other contexts that "DHS's long-standing interpretation has been that 1226(a) [discretionary detention] applies to those who have crossed the border between ports of entry and are shortly thereafter apprehended." Dkt. No. 17 (citing Solicitor General, Transcript of Oral Argument at 44:24–45:2, *Biden v. Texas*, 597 U.S. 785 (2022) (No. 21-954)) . . .

In 2025, however, the Government's policy changed dramatically. The DHS revised its § 1225 designation to "apply expedited removal *to the fullest extent authorized by statute.*" Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025) (emphasis added). The Secretary of Homeland Security memorandum directed federal immigration officers to "consider ... whether to apply expedited removal" to "any alien DHS is aware of who is amenable to expedited removal but to whom expedited removal has not been applied." Dkt. No. 1 at ¶ 33. Officers are encouraged to "take steps to terminate any ongoing removal proceeding and/or any active parole status." *Id.* The memorandum states that DHS shall take the actions contemplated by the memorandum "in a manner that takes

account of legitimate reliance interests," but states that "the expedited removal process includes asylum screening, which is sufficient to protect the reliance interests of any alien who has applied for asylum or planned to do so in a timely manner." Huffman Memorandum (Jan. 23, 2025).

Since mid-May of 2025, the Department of Homeland Security has made a practice of appearing at regular removal proceedings in immigration court, moving to dismiss the proceedings, and then re-arresting the individual in order to place them in expedited removal proceedings. Dkt. No. 1 at ¶¶ 35–40. If the immigration judge does not dismiss the full removal proceedings, ICE still makes an arrest, apparently in reliance on § 1225(b)(2)'s detention provision.

*Salcedo Aceros*, 2025 WL 2637503 at *1-4 (internal footnotes omitted).

### C.   Parole Revocation

In *Y-Z-H-L v. Bostock*, 792 F. Supp. 3d 1123 (D. Or. 2025), the court explained the parole process in immigration cases and noted that before parole may be revoked, the parolee must be given written notice of the impending revocation, which must include a cogent description of the reasons supporting the revocation decision. The court held:

> Section 1182 . . . has a subsection titled "Temporary admission of nonimmigrants," which allows noncitizens, even those in required detention, to be "paroled" into the United States. This provision, at issue in this case, states:
>
>> The Secretary of Homeland Security may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and **when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.**
>
> 8 U.S.C. § 1182(d)(5)(A).

*Id*. at 1133 (emphasis added). *Y-Z-H-L* determined that under the Administrative Procedure Act, immigration parolees are entitled to determinations related to their parole revocations that are not arbitrary, capricious or an abuse of discretion. *Id*. at 1146-47. An agency acts arbitrarily and

capriciously by failing to make a reasoned determination or where the agency fails to "articulate[] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Id*. at 1144 (footnote and citation omitted).  Parole revocations in the context of the INA must occur on a case-by-case basis and may occur "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled." *Id*. at 1133 (quoting 8 C.F.R. § 212.5(e)).  8 C.F.R. § 212.5(e) requires written notice of the termination of parole except where the immigrant has departed or when the specified period of parole has expired.

Applying *Y-Z-H-L* and § 212.5(e), in *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128 (W.D.N.Y. 2025), the court found that the INA requires a case-by-case analysis as to the decision to revoke humanitarian parole:

> This Court agrees that both common sense and the words of the statute require parole revocation to be analyzed on a case-by-case basis and that a decision to revoke parole "must attend to the reasons an individual [noncitizen] received parole." *See id*. There is no indication in the record that the government conducted any such analysis here. On the contrary, the letter Mata Velasquez received merely stated summarily that DHS had "revoked [his] parole." Docket Item 62-1 at 5. Thus, there is no indication that—as required by the statute and regulations—an official with authority made a determination specific to Mata Velasquez that either "the purpose for which [his] parole was authorized" has been "accomplish[ed]" or that "neither humanitarian reasons nor public benefit warrants [his] continued presence...in the United States." *See* 8 C.F.R. § 212.5(e)(2)(i). As a result, DHS's revocation of Mata Velasquez's parole violated his rights under the statute and regulations. *See Y-Z-L-H*, 2025 WL 1898025, at *13.

*Id*. at 146.  And in *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025), the court reached a similar conclusion relying on the Due Process Clause:

> . . . **even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody**. *See Romero v. Kaiser*, No. 22-cv-02508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022) ("[T]his Court joins other courts of this district facing facts similar to the present case and finds Petitioner raised serious questions going to the merits of his claim that due process requires a hearing before an IJ prior to re-detention."); *Jorge M. F. v. Wilkinson*, No. 21-cv-01434, 2021 WL 783561, at *2 (N.D. Cal. Mar. 1, 2021); *Ortiz Vargas v. Jennings*, No. 20-cv-5785, 2020 WL 5074312, at *3 (N.D. Cal. Aug.

23, 2020); *Ortega*, 415 F. Supp. 3d at 969 ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen released from immigration detention] have a liberty interest in remaining out of custody on bond.").

*Id.* (emphasis added). Other courts, including this Court, have held similarly. *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025); *see Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) ("The Supreme Court has consistently held that non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals.").

## III.     Exhaustion

### A.     Governing Authority

"Section 2241 … 'does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus.'" *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004) (citing *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001)). The Ninth Circuit, however, requires that, "as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez*, 239 F.3d at 1047 (citing *United States v. Pirro*, 104 F.3d 297, 299 (9th Cir. 1997)). "Under the doctrine of exhaustion, 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed ... remedy has been exhausted.'" *Laing*, 370 F.3d at 997-98 (citing *McKart v. United States*, 395 U.S. 185, 193 (1969)). "Exhaustion can be either statutorily or judicially required. If exhaustion is required by statute, it may be mandatory and jurisdictional, but courts have discretion to waive a prudential requirement." *Id.* at 998 (citing *El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review,* 959 F.2d 742, 746 (9th Cir. 1991); *Stratman v. Watt,* 656 F.2d 1321, 1325-26 (9th Cir. 1981)). "Although courts have discretion to waive the exhaustion requirement when it is prudentially required, this discretion is not unfettered…. Lower courts … [must] first determin[e whether] the exhaustion requirement has been satisfied or properly waived." *Id.* (internal citations omitted); *see Murillo v. Mathews*, 588 F.2d 759, 762, n.8 (9th Cir. 1978) ("Although the application of the rule requiring exhaustion is not jurisdictional, but calls for the sound exercise of judicial discretion, it is not lightly

9

to be disregarded.").

**B.     Analysis**

Petitioner contends in his petition that it would be futile to seek a bond hearing from an immigration judge as his request would be summarily denied based on the government's current interpretation of the Board of Immigration Appeal's ("BIA") recent decisions in *Matter of Q. Li*, 19 I&N Dec. 66 (B.I.A. 2025) and the government's recent adoption of a policy treating noncitizens similarly situated to Petitioner as subject to mandatory detention. (Doc. 7 ¶¶ 3-4, 28-30). Petitioner argues that no statutory exhaustion requirements apply to his claims of unlawful custody in violation of his due process rights and that there are no administrative remedies that he needs to exhaust. *Id*.

Respondents do not address exhaustion of administrative remedies in their response to the petition. *See generally* (Doc. 14).

The Court finds that the prudential exhaustion requirement should be waived as it would be futile to seek release by administrative means. Specifically, because Respondents contend that Petitioner is subject to indefinite mandatory detention under 8 U.S.C. § 1225(b), under that framework, Petitioner has no statutory right to a bond hearing during his course of detention and therefore lacks recourse through statutory or administrative means. *See Jennings v. Rodriguez*, 583 U.S. 281, 282 (2018) ("§§ 1225(b) … do[e]s not give detained aliens the right to periodic bond hearings during the course of their detention."); *Rodriguez Diaz v. Garland*, 53 F. 4th 1189, 1201 (9th Cir. 2022). Further, the BIA has recently held that all noncitizens present within the country without admission are seeking admission pursuant to § 1225, rendering any administrative relief futile. *See J.A.C.P. v. Wofford*, No. 1:25-cv-01354-KES-SKO (HC), 2025 WL 3013328, at *7 n.9 (E.D. Cal. Oct. 27, 2025) ("In addition, pursuit of administrative remedies would almost certainly be futile given the BIA's recent holding that all noncitizens present in the United States without admission are 'seeking admission' for purposes of 8 U.S.C. § 1225(b)(2)(A) and must be detained.") (citing *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (B.I.A. 2025)).

For these reasons and because Respondents do not object to and do not otherwise address Petitioner's arguments that exhaustion should be waived, the Court will waive the prudential

exhaustion requirement for Petitioner's claim for habeas corpus relief. *See, e.g, Chavez v. Noem*, No. 3:25-cv-02325-CAB-SBC, 2025 WL 2730228, at *3 (S.D. Cal. Sept. 24, 2025) (waiving prudential exhaustion requirement because the BIA "already applied its expertise in deciding and designating" *Hurtado* as precedential, pursuant to which detainees are subject to mandatory detention without bond under § 1225(b)(2)); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1253 (W.D. Wash. 2025) ("The Ninth Circuit has recognized 'the irreparable harms imposed on anyone subject to immigration detention.'") (citing *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017)); *J.A.C.P.*, 2025 WL 3013328, at *7 n.9.

### IV. Discussion

Petitioner asserts six causes of action in his petition: violation of the INA and its implementing regulations; violation of the Fifth Amendment to the U.S. Constitution (due process and equal protection); violation of the Administrative Procedures Act; violation of the Suspension Clause of the U.S. Constitution; violation of the *Accardi* Doctrine.

#### A. Procedural Due Process

##### 1. Governing Authority

"The Due Process Clause of the Fifth Amendment mandates that '[n]o person shall ... be deprived of life, liberty, or property, without due process of law.'" *United States v. Quintero*, 995 F.3d 1044, 1051 (9th Cir. 2021) (citing U.S. Const. amend. V). "The Due Process Clause 'protects individuals against two types of government action': violations of substantive due process and procedural due process." *Id.* (citing *United States v. Salerno*, 481 U.S. 739, 746 (1987)).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth … Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "[F]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "Procedural due process requires that, even where a deprivation of liberty survives substantive due process scrutiny, the action 'be implemented in a fair manner.'" *Quintero*, 995 F.3d at 1051-52 (citing *Salerno*, 481 U.S. at 746). "The 'right to be heard before being condemned to suffer

11

grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society.'" *Mathews*, 424 U.S. at 902 (citation omitted). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* (citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (citations omitted); *see Hernandez*, 872 F.3d at 990 ("[I]t is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority."). "In the context of immigration detention, it is well-settled that 'due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Hernandez*, 872 F.3d at 990 (quoting *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011)).

2.   Analysis

The issue here is whether Petitioner is entitled to immediate release under appropriate supervision and for enjoinment of further unlawful detention unless there is a material change in his removal situation or other circumstances that would justify his detention. On Petitioner's as-applied challenge, the Court considers (1) "whether there exists a protected liberty interest under the Due Process Clause, and …[(2)] the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

Petitioner has an underlying, continuing liberty interest in being free from re-detention. Specifically, Petitioner was released on an Order of Release on Recognizance more than two years prior to his re-detention in July 2025. (Doc. 7-1, Ex. F; Doc. 14 at 1-2). In releasing Petitioner on his own recognizance, immigration officials necessarily determined that Petitioner did not present

1  a risk of flight or danger to the community. *See* 8 C.F.R. § 1236.1(c)(8) ("Any officer authorized
2  to issue a warrant of arrest may, in the officer's discretion, release an alien not described in section
3  236(c)(1) of the Act, under the conditions at section 236(a)(2) and (3) of the Act; provided that the
4  alien must demonstrate to the satisfaction of the officer that such release would not pose a danger
5  to property or persons, and that the alien is likely to appear for any future proceeding."). Accord
6  *Rodriguez Diaz*, 53 F.4th at 1196. Petitioner remained released from immigration detention for a
7  significant amount of time without incurring a criminal record and in full compliance with his ICE
8  reporting requirements. (Doc. 7 ¶¶ 8, 11). Indeed, Respondents do not assert that Petitioner failed
9  to comply with the conditions of his release, nor do they proffer facts to suggest Petitioner is a
10 danger to the public or a flight risk. *See* (Doc. 14 at 5 n.6).

11 The undersigned agrees with other courts and other judges of this Court that noncitizens
12 released from immigration custody on general orders of supervision or on their own recognizance
13 (like Petitioner here) have a liberty interest in their freedom that implicates protections under
14 principles of procedural due process. *See Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1031
15 (N.D. Cal. 2025) ("The fact that Petitioner is subject to discretionary conditions of release likewise
16 does not mean he lacks a protectable liberty interest and can be re-detained without process."); *see*
17 *id.* ("[E]ven if immigration detainees must wait months before a periodic re-review of their
18 detention, those already released on immigration bond possess an interest in their continued liberty,
19 which grows over time, and a due process right to a hearing before being re-detained."); *Nak Kim*
20 *Chhoeun v. Marin*, 442 F. Supp. 3d 1233, 1245 (C.D. Cal. 2020). Accord *Doe*, 787 F. Supp. 3d at
21 1099 (considering in connection with a petitioner's procedural due process claim that "[t]he lengthy
22 duration of his conditional release as well as the meaningful connections Petitioner seems to have
23 made with his community during that time create a powerful interest for Petitioner in his continued
24 liberty"); *Ramazan M. v. Andrews*, No. 1:25-cv-01356-KES-SKO (HC), 2025 WL 3145562, at *5-
25 6 (E.D. Cal. Nov. 10, 2025) ("Even when a statute allows the government to arrest and detain an
26 individual, a protected liberty interest under the Due Process Clause may entitle the individual to
27 procedural protections not found in the statute"). *Cf. Daley v. Andrews*, No. 1:25-cv-00922-KES-
28 CDB, 2026 WL 101840, at *9-10 (E.D. Cal. Jan. 14, 2026) (finding a petitioner mandatorily

detained pursuant to § 1226(c) did not have a protectible liberty interest because he had remained in continuous custody and never released on supervision).

Respondents invoke the "entry fiction" doctrine for the proposition that "even if an alien seeking admission is physically present on U.S. soil and has been 'paroled elsewhere in the country for years pending removal,' he still is 'treated . . . as if stopped at the border' for immigration law purposes." (Doc. 14 at 8-9) (*citing Barrera-Echavarria v. Rison*, 44 F.3d 1441, 1450 (9th Cir. 1995), and *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020)). Other judges of this Court, as well as many other courts, have considered and rejected the government's arguments, finding that Section 1226(a), not Section 1225(b)(2), provides the appropriate framework for noncitizens released following their initial encounter with immigration authorities and have resided in the United States for a significant period, like Petitioner here. *See, e.g., H.J.G.G. v. Wofford*, No. 1:25-cv-01718-JLT-EPG-HC, 2025 WL 3761803, at *4 (E.D. Cal. Dec. 30, 2025) (citing *Castillo v. Wofford*, No. 1:25-CV-01586-JLT-HBK, 2025 WL 3466064, at *8 (E.D. Cal. Dec. 2, 2025) (finding *Barrea-Echavarria* and *Thuraissigiam* "inapposite and reject[ing] Respondents' argument that 'entry fiction' cases guide the analysis for cases not involving an expedited removal process")); accord *Valencia Zapata v. Kaiser*, 801 F. Supp. 3d 919, 935-37 (N.D. Cal. 2025), appeal filed, No. 25-7472 (9th Cir. Nov. 26, 2025).

Respondents separately argue that, given Petitioner was deemed to have a credible fear of persecution following his recent arrest and detention, 8 U.S.C. § 1225(b)(1)(A) provides for mandatory detention that may not be reconsidered by an IJ based on lack of danger or flight risk. (Doc. 14 at 3). But "the government cannot switch tracks" and subject Petitioner to mandatory detention now under section 1225(b)(2) "after it previously released him on his own recognizance under section 1226(a)." *Valencia Zapata*, 801 F. Supp. 3d at 936; accord *Souza v. Robbins*, No. 1:25-cv-01597-DJC-JDP, 2025 WL 3263897, at *2 (E.D. Cal. Nov. 23, 2025).

Because Petitioner has shown he has a protected liberty interest to remain free from re-detention based on his release on recognizance, the Court must determine what process is due before the government may terminate that liberty interest. To determine this, the Court considers the following factors articulated in *Mathews*: "[(1)] the private interest that will be affected by the

14

official action; [(2)] the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [(3)] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335; *see Hernandez*, 872 F.3d at 993-94 (applying *Mathews* test in immigration detention context); *id*. at 993 ("The appropriateness of the requirement that ICE and IJs consider financial circumstances and alternative conditions of release is confirmed by the balance of factors under *Mathews*[.]").

As to the first factor, Petitioner has shown he has a significant private interest in remaining on release from detention. He had been released from immigration custody for well over two years prior to his re-detention, and during that time, he incurred no criminal convictions, complied with all obligations of his release, including periodic ICE check-ins, resided at a residence known to ICE, and worked as a laborer. (Doc. 7-1, Ex. D). Petitioner's continued liberty interest in remaining on release is undermined by his re-detention without a bond hearing. *Doe*, 787 F. Supp. 3d at 1093-94 ("Freedom from imprisonment is at the core of the Due Process Clause…. The lengthy duration of his conditional release as well as the meaningful connections [he] seems to have made with his community during that time create a powerful interest for [him] in his continued liberty.").

As to the second factor, the risk of an erroneous deprivation of Petitioner's liberty interest is considerable here where he has not received any bond or custody redetermination. *Id*. at 1094; *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Because there were no procedural safeguards to determine if Petitioner's re-detention was justified, and Respondents concede there are no facts indicating any change in circumstances while Petitioner was on release sufficient to justify Petitioner's re-detention, the probable value of the additional procedural safeguard of a bond hearing to determine whether Petitioner is a flight risk or a danger to the community is high such that this factor weighs in favor of granting a bond hearing. *See Doe*, 787 F. Supp. at 1094 ("[G]iven that Petitioner was previously found to not be a danger or risk of flight and the unresolved questions about the timing and reliability of the new information, the risk of erroneous deprivation remains high."); *A.E.*, 2025 WL 1424382 at *5; *Ramazan*, 2025 WL 3145562, at *6. Therefore, this factor weighs in favor of granting a bond hearing.

Third, the government's interest in detaining Petitioner without a bond hearing is low. *Doe*, 787 F. Supp. 3d at 1094 (citation omitted); *see Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)); *see also Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("And, like other Courts in this district, the Court concludes that the government's interest in re-detaining Petitioner-[] without a hearing is 'low,' particularly in light of the fact that Petitioner[] has long complied with his reporting requirements."). "The effort and cost to provide Petitioner with [a bond hearing] is minimal[.]" *Doe*, 787 F. Supp. 3d at 1094. Therefore, any additional burden from requiring the government to seek a bond hearing before it may re-detain Petitioner does not outweigh his liberty interest and the risk of erroneous deprivation. Accordingly, this factor weighs in favor of granting a bond hearing.

In sum, the Court finds that, under *Mathews*, Respondents have violated Petitioner's procedural due process rights under the Fifth Amendment to the U.S. Constitution through his arrest in July 2025 and continuous and continuing detention thereafter.

### B. Petitioner's Other Claims and Respondents' Request to Hold in Abeyance

Because the Court may grant the full relief Petitioner seeks – immediate release – having found the writ must issue as to his procedural due process claim (Claim 2), the Court declines to address Petitioner's other claims which seek the same or similar relief.

Separately, Respondents assert that the dispute over the applicability of 8 U.S.C. §§ 1225 or 1226 "is arising in many immigration cases, including *Rodriguez Vazquez*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025), which is on an expedited appeal to the Ninth Circuit and appears to be set for argument on the March 2026 calendar." (Doc. 14 at 13). Respondents invite the Court to hold the case in abeyance pending conclusion of appellate proceedings in *Rodriguez Vasquez*. Having found that Petitioner's re-arrest without a bond determination and continuous detention for more than six months violates the Constitution, the Court declines to do so. *See Zadvydas*, 533 U.S. at 690 (reaffirming that "freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.")

///

///

## V.  **Conclusion and Order**

Accordingly, IT IS HEREBY ORDERED that:

1. The petition for writ of habeas corpus (Doc. 1) be GRANTED;

2. Respondents are ORDERED to release Petitioner immediately

3. Respondents are ENJOINED AND RESTRAINED from re-detaining Petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that Petitioner is a flight risk or danger to the community such that his physical custody is legally justified; and

4. The Clerk of the Court is DIRECTED to close this case.

IT IS SO ORDERED.

Dated:   **January 29, 2026**                       _____
                                                     UNITED STATES MAGISTRATE JUDGE